Mr. McReynolds, representing the Hollanders in this appeal. Thank you for granting oral arguments. I notice that all of you have your legal education in the common law of the great of Louisiana sandwiched in between, which, as I'm sure you know, traces its legal tradition to a different legal regime, a lusty and gusty French, who I'd like to think had a far more forgiving and tolerant understanding of human nature than maybe those plenty-eyed Puritans who brought common law over through all your states from England. And I think the difference between those two legal systems, which is the pivot point for the resolution of this appeal, can be summed up in an aphorism. And my argument would be summed up in an aphorism. And I would say it this way, that in the legal traditions of the French and in the civil code of Louisiana, that all frauds are based on a deception, but not all deceptions are frauds. And when Judge Magner was presented with this case that she had to adjudicate in bankruptcy court, she was faced with two different legal regimes that had to deal with that question. One was the state law claim for retribution, and one was the common law source of the elements that constitute grounds for declaring a debt non-dischargeable under the bankruptcy code, section 523A2A1. I think it's A1. And in the common law, I don't think it's the same standard. It's certainly not the same standard in the cases that have been decided by scores of bankruptcy courts throughout this country and in the decisions decided by this court. The most significant one being recoverage, which I cite and quote a lot on pages 19 and 20. What you need to do, so in deciding the retribution claim— But before we get to the Louisiana law of what is fraud in the civil, we have the federal appellate procedure rule number 6, and whether that was complied with that gets us here at all. And I was wondering if you could address that concern, that appellate procedure rule 6 was not complied with, where you have to set out the issues more specifically. The issue—look, the appeal of Judge Morgan's ruling is based upon two fundamental errors. She reversed a finding of fact, and in our view— Keep your voice up a little bit. I'm sorry, what? Keep your voice up a little bit. I'm sorry. So she reversed a finding of fact that was made by Judge Magner by misapplying the appropriate appellate standard of review, and she misconstrued and misapplied the law applicable to the state law claim of fraud. And of course, the procedure, I'm not sure I even understand what their procedural argument is, because the errors that she made could not have been identified or argued prior to the decision that had been rendered by  And so when you take a notice of appeal, you take a notice of appeal of the judgment that she rendered, and that's what we're asking this court to reverse, and to reinstate the judgment of the bankruptcy court and the findings that she made, which are relevant to the ultimate decision of the case. So that's my response to that. So if I can go to the substance then, you know, when Judge Magner was evaluating the claim in the adversary proceeding, she made a finding that there was no grounds under the facts for rescission of the purchase price of the house, because the Hollanders honestly believed that the defects that was the basis of the rescission claim had to do with defects in the subflooring system of the floors that Hollanders had replaced. They honestly believed they had repaired those damages. And I can tell you under 2545, had the case stayed under 2545, which is the Reddivision Article that entitles the award of attorney's fees based upon a seller's failure to disclose known defects, it's been long understood in Louisiana, and I'll cite you a case, Buesen-Lenner v. Peck, decided by the First Circuit Court of Appeal in Louisiana in 1975, which has been really amazingly analogous to this one, where a seller of a house sold a house that had a leaky roof, but the seller had repaired the roof and thought that the roof repairs had been made by the roofer, but they hadn't because the roofer had not done the right job, and the court awarded damages for the repair of the roof, but denied attorney's fees. And the reason they decided attorney's fees is because the fact that the defendant, and I'm quoting from page 32 of the opinion, and it's 316, 2nd 27, the fact that the defendant had knowledge of the defect prior to the sale did not cause him to be liable for attorney's fees under Article 2545. His actions taken prior to the sale to remedy the defect were reasonable, and he was in good faith in believing that the defect was cured. Now, that's a finding of fact that Judge Magner made based on the testimony of the hollers in this case, that they honestly believed that they had repaired the floor. But, and so she denied rescission under 2545 and denied attorney's fees, and awarded damages based upon, since it was a late defect that neither one knew about, and even the Segalitos couldn't have discovered upon inspection, the seller was liable under 2531 for the award of damages, which she calculated to be $28,000, what this case is about, a $28,000 damage claim for defects to a subfloor system. Segalitos are insistent upon, they want to prove fraud. Now, they would not be entitled to attorney's fees under 2545 under the case law. So, to prove fraud, they've got to prove fraud under 1953, and that's what this case is about. Now, under 1953, in the Civil Code, as I've outlined on pages 22 to 25 of the brief, it's not enough to prove a misrepresentation. Let me ask you a question, though, about the requirement of fraud under the Bankruptcy Code, the sufficiency of the proof of fraud to avoid the discharge of a debt. To what extent is there any, the code itself, set a standard of fraud that is not controlled by an underlying state law claim? In other words, is it, is the label that's put on the particular conduct under state law, is that controlled, whether it's fraud for discharge purposes? My question goes, if a, in various state law systems, Texas, Louisiana, many others, what's an actual, maybe called fraud, under various statutes and so on and so forth, misleading conduct, civil fraud, enough to impose liability, may not carry the same level of, may carry different levels of censure, et cetera, et cetera. The basic purpose of this discharge, the exception to discharge of debt, is that we're not going to protect you from fraudulent conduct. Now, we're operating here on the basis that everybody, that we're looking at Louisiana law and nothing else, but I just know if there, I just don't know the answer to what extent we are, there's, what statutory standard, what bankruptcy law standard, if any, does that state law, judicial liability have to meet? So Judge Morgan based her reversal of Judge, I'm sorry, Judge Morgan based her reversal of Judge Magner's factual finding, based upon Judge Magner's understanding and application of the law that she understood, was based upon her finding that the Hollanders were guilty of an intent to deceive. But the intent to deceive was based upon the incomplete disclosure of the extent of the prior repairs in the real estate form. And she said that intent to deceive there, although she was grudgingly finding it a dissent, was for purposes of establishing false pretense under the bankruptcy code. Now, if you read that statute, there are three different things. There's three different things that will declare a debt non-dischargeable, false pretense, false representation, and actual fraud. Now, I think false pretense and false representation were part of the original act of bankruptcy that was adopted. Well, let's take a look at this. Suppose the state law that it's being relied upon imposes liability for a failure to disclose, and it can be an innocent, it can be an oversight, whatever, but if it's a nondisclosure of information determined to be material, that that gives you, that gives the other person a remedy of rescission or perhaps recovery of money damages. Would that be a non-dischargeable under the bankruptcy code? Well, but— I mean, the state may put the label of fraud on it, use that, call it civil fraud or something else, but would that— Fraud, for purposes of the civil code under 1953, has to be established as elements. What law do we look to to determine that? Well, we have to look to the law that they were arguing applied to their case, which was Article—this whole case is turned upon on the application of Article 1953, Civil Code Article 1953. They didn't go down to 2545. We look at the Louisiana law because that's the basis of the claim, and that's the basis of the recovery. All I'm suggesting to you is that state law systems can impose liability on transactions, participants in transactions, where the conduct is innocent conduct. I'll sell you a property, and I don't know. I may have some duty to disclose, whatever, but I don't know that, but they impose liability anyway. But not on a redhibition claim, and not on a fraudulent claim based upon 1953. You have to prove the elements necessary to establish recovery under those two statutory regimes, which is what they presented, and which what Judge Magner disagreed and did not find, as a matter of fact, that the elements constituting those state law claims had been met. That's different from— Do we have case law? Don't we have some federal cases and some state Louisiana cases that say all you need is intent to deceive? No, you have to have an intent to defraud. I went through that in great detail in my briefing, that the intent to deceive is the misrepresentation element of it, but you don't leave it there. The deception that you identify has to be done for a specific and particular purpose, which is you've got to either intend to cause the other party a loss, or to take an advantage of those elements here, because they honestly believe that there was nothing wrong with the house. And you might argue that maybe she shouldn't have found a false pretense at all to begin with, for purposes of non-dischargeability, but that horse is out of the barn and we're far beyond that point. But there was no intent to harm the people who bought the house. And that was a specific finding made up on Judge Magner's view of the entire evidence. There was an intent to ensure that there was a sale of the house, wasn't there? Well, they obviously wanted to sell the house, that's true. But even . . . that's why I cite this case to you, Busen and Leonard. If a defendant is selling a house, has repaired the damage to the house, and honestly believes they've effected a repair, they're not entitled to rescission under 2545, which is the redemption article, and they're not entitled to attorney's fees. Now, they're not going under 2545 here. They're going under fraud. Fraud is a heavier burden of proof than proven knowledge, failure to disclose a known defect. You don't have to have an intent to harm anybody with that. It's just a failure to disclose. But under fraud, you've got to prove something a lot more than that. You've got to prove an intent to cause a harm. And that's the finding that Judge Magner said was absent in the proof of their case. And that's the finding that Judge Morgan, I say, misapplied the standard of review. And there was no clear error in that finding, in fact, on these facts and on that testimony. And so I'm asking that you reverse Judge Morgan's ruling and reinstate Judge Magner's ruling. She was the bankruptcy judge. She heard the case. She was given the responsibility to make the findings. She did her job. Judge Morgan's equivalence of a deceit for purposes of false pretense under the Dischargeability Statute is not the same thing as proving an intent to harm under the state law civil article governing fraud. It's simply not. And the cases make that plain. And there are hundreds of them going back years. Even when you look at the cases that had to do when Louisiana had its own solvency laws before Congress enacted the Bankruptcy Act. You had to have acts of fraud. But then you had to also prove a separate intent to the fraud. And they're the biggest case I cite in there, Campbell v. Creditors. The jury said, yeah, it was a fraudulent act, but he didn't intend to harm anybody. Appellate Court reversed. Supreme Court reversed that, saying, no, the jury made a finding a fact. There was no intent to cause a harm. That finding has to stand. Well, yeah, we have a disclosure form here in the real estate transaction. They checked the answer no to a question, and the answer was yes, should have been yes. In other words, they basically misrepresented it. They lied about that answer. Is that what it comes down to? So that's the finding that Judge McNamara made. For purposes of— Keep your voice up, please. This is the finding of fact that Judge Magner made for purposes of establishing the nondischargeability of the debt. It was not a finding that she made for purposes of establishing a right to rescission under Redhibition or for purposes of finding a right to rescission based on fraud under 1953. It's a different thing. Now, there was an explanation for that that was given by the Hollanders. I mean, she filled out that—Ms. Hollander filled out that form under the tutelage of the two real estate brokers that she had. She asked, do I need to disclose the full extent of the repairs of the house? And they said no. And the expert that she consulted said no. No, it's fixed. It's fixed. There are no more defects in the house. So she didn't fail to disclose the existence of a known defect at the time that she was selling the house. Well, the only thing that she failed to disclose was the prior extent of the repairs that she had made, which is not a ground, given the judge's finding that she was honest in her belief that she didn't have to do that, was not a grounds for rescission and not a grounds for fraud. And that's the argument I want to make, and I guess I can leave it at that, and I'll save time for rebuttal. Thank you, Mr. McReynolds. Thank you, Your Honor. Mr. Jahnke, you want to educate these non-Louisiana-educated judges as to what does fraud mean in Louisiana? I'd be delighted to, Your Honor. Good morning, Your Honors, and may it please the Court. My name is Benjamin Jahnke. I represent the Appleese, Dr. Robert and Rhonda Sigilito. And I'd like to begin very briefly, and maybe for no more than a minute on this issue, but this threshold issue that all of the arguments made in the Hollander's appeal brief and all of the arguments made today were not properly preserved and are therefore waived. And they're not properly preserved because they failed to follow the rules under Federal Rule of Appellate Procedure and Bankruptcy Rule 8006, and now Appellate preserves only those issues stated in their Notice of Appeal, and all other issues are waived. And they waived them here when they raised new and qualitatively different issues in their appeal brief. Now, originally in their statement of issues, the Hollanders argued that the district court selected the wrong standard of review. Well, obviously that's not the case because you only have to read the district court's decision once to see that the district court was explicitly applying the clearly erroneous standard. Originally, the Hollanders said that the district court was substituting its own findings of fact for those of the district court. And obviously that's not the case either because if you look at the district court's opinion, it relies exclusively on the bankruptcy court's very own findings of fact to establish the fraud in this case. But counsel, you all have been litigating this case for twelve years, isn't that right? I think it's thirteen years. Oh, I'm sorry. It's thirteen years now. And so what we do, whatever they said they were complaining about, whatever they said the issue was, we're here because of attorney's fees, isn't that right? We're here because of the attorney's fees that give rise as a result of the determination of fraud. So however they describe the judge's error, we know that the error that they're claiming is that the judge made an error in deciding that attorney's fees should be awarded, right? And the attorney's fees accompany the determination of fraud. And make no mistake, that determination of fraud is incredibly important to the sigillitos. Well, you didn't want to spend much time on this whole waiver argument. No, not at all. And I don't either because I don't find it very compelling. Instead, how about I'll explain to you how they're wrong on all of the issues, including the ones that I contend are waived. All right. And the issues in this case are fairly simple. And the reason they're simple is they've been whittled down through thirteen years, eleven judgments, and now six appeals. And almost all of their appeal brief is dedicated to this explanation of what fraud is under Louisiana law, under this civil tradition. And I'll say that we agree with them on what that definition of fraud is. The gravamen of the appeal today is whether the district court selected and correctly applied the clearly erroneous standard of review in here that it did. The district court said that findings of fact are reviewed by the clearly erroneous standard. Conclusions of law are reviewed by the de novo review standard. But there's a twist that the district court identified and correctly applied in this case. And that is that a district court may correct a finding of fact that is predicated on an erroneous conclusion of law. And that's exactly what the district court did here when it held that the misleading disclosure statement and the omissions were not only intended to deceive, but were also made with the intent to obtain an unjust advantage. And it did so not by going back through the record and cherry picking and finding its own findings of fact. It did so by looking exclusively at the findings of fact that the bankruptcy court rendered in its original 2008 memorandum opinion to describe all of the bad things that the Hollanders did to give rise to a non-dischargeability determination under Section 523. And critically, on each of the four occasions that the issue of fraud has been before the bankruptcy court, including all the occasions on remand, the bankruptcy court has never retreated once on any one of those findings. The district court has effectively affirmed every single one of those findings over and over and over again. In this instance, however, it has corrected that one factual finding that the misleading statements and omissions could have possibly been for any purpose other than to obtain an unjust advantage over the sigillitos. The district court held that the record before the bankruptcy court amply and clearly supported that there was an intent to obtain an unjust advantage. That record and the bankruptcy court's findings established, for example, that the Hollanders failed to disclose alterations in the home and that the alterations were both material and purposeful. That 10 months prior to the sale, the Hollanders actually sued their architect, builder, and installation contractor for the very same design defects that they passed on to the Hollanders, to the sigillitos, and that the sigillitos encountered immediately upon moving into the home. The record also established that had the sigillitos known the full extent of everything, and that had the Hollanders not lied, they would not have purchased the home. You can imagine the sigillitos' frustrations with, as the bankruptcy court boldly, as the district court boldly put it, the bankruptcy court's repeated failure to make the appropriate determinations on remand. Now, five years ago, in this same case, I was before the Fifth Circuit, a different panel of the Fifth Circuit, and I explained how this case, then eight years old at that time, had gone on far too long. And in the district court's opinion that is now before this court today, it held that it had hoped to finally end the litigation that should have ended years ago. Now, when we talk about the clearly erroneous standard, we're talking about the district, the application to the bankruptcy court's finding that the misleading disclosure statements and the intent to deceive could have possibly been for any purpose other than to obtain an unjust advantage over the sigillitos. The district court held that the bankruptcy court attempted to sidestep and recharacterize and create a directly conflicting finding of fact, and that is where there is the clear error. This is not a case where the district court and the bankruptcy court took the same facts and viewed them differently. This is not a case where there are two possible views of the same facts. We're dealing with the clearly erroneous standard. This is not the case of the district court going back through the record and trying to see what else could possibly give rise to the fraud, or cherry-picking some facts here and some facts there and saying, yep, tape it together, we've got fraud. This is the district court using only those facts that the bankruptcy court held in its original memorandum to say, no, that is fraud. And the reason is, is if you look at all those findings of fact, the bankruptcy court couldn't have better defined fraud than had it copied the definition out of the Louisiana Civil Code. Or if you look at any of the Louisiana cases that we've cited through the course of this epic appeal, those cases have said that fraud exists if it can be shown that material misrepresentations have been made by one party designed to deceive the other. Or stated in another way, fraud consists in material misrepresentations committed by one party designed to deceive the other. Or maybe most relevant for purposes today, we deem it an unjust advantage to obtain a sale by a misrepresentation. These are basically the bankruptcy court's very own words. And they've never retreated from any of these findings. The district court harnessed upon these findings of fact to show that there was indeed center in this case. When we speak of intent, there's no such thing in the civil law here as a degree of intent. Under Article 1953, the critical inquiry is, what is the object of the intent? And in Article 1953, it's short. It's only 51 words long. There's only two possible objects. Fraud is a misrepresentation or suppression of the truth made with the intention either to, A, obtain an unjust advantage over one party, or B, to cause a loss or inconvenience to the other. Fraud may also result from silence or inaction. And here, we're concerned with that A, that one object, the intent to obtain an unjust advantage from one party over the other. And here, of course, there was the intent to obtain an unjust advantage. That's the direct inconsistency that the district court rightly found because the bankruptcy court made a factual finding predicated on an erroneous interpretation of the law. If Louisiana law, I understand your argument, but if Louisiana law had imposed liability, even though the failure to disclose was not intended to deceive or to gain an advantage, would that be dischargeable under the bankruptcy code? Or is that requirement of SATR a prerequisite of the bankruptcy law? It's not a dischargeability. I think, if I understand your question correctly, and I think it dovetails with the same question that you asked the Hollander's counsel, what is the difference between a determination under 523 and a determination of fraud under Louisiana law? And I would submit that there are two different inquiries, and here, the bankruptcy court appropriately did treat them as two different inquiries. However, we have never argued, and the district court did not, despite what the Hollanders contend, equate a finding of non-dischargeability under 523 with a finding of fraud under Louisiana law, or vice versa. In fact, the district court expressly declined in its memorandum opinion to decide whether, for all purposes, and as a matter of law, a finding of non-dischargeability under Section 523 necessarily gives rise to a finding of fraud under Louisiana law. We're not here to argue that today, either. Instead, what we are here to argue is . . . I understand you. I understand you are. That's not an issue for you because you do have SINR, and I appreciate that. I was just . . . the direction of my question was that this fight over the overdrive characterization, whether it really controls, whether it would otherwise be dischargeable, but that was the reason I asked. I would venture to say that if you have a finding of fraud under Louisiana law, then you're more likely than not going to have a non-dischargeable determination. But I think that gets to a good point. There are two different definitions. There are two different analyses, right? And we had to go through the analysis to get a non-dischargeable determination in the first place. And I think it's interesting that the Hollanders in their appeal brief will refer to Section 523 as the false pretenses article. Well, 523 says more than just false pretenses. It says false pretenses or actual fraud. You don't see the word actual fraud in their appeal brief. It doesn't tend to their argument. But what I do think is interesting is that they cite the Fifth Circuit's decision, Matter of Martin, to define what fraud is. That's a 2004, I believe, decision of this Court. And there, the Fifth Circuit said as to what is required for a 523 determination. Debts falling within Section 523A2A, the same section we're dealing with here, are debts obtained by frauds involving moral turpitude or intentional wrong, and any misrepresentation must be knowingly and fraudulently made. Now, that's not a distinction between some sort of subsection that only deals with fraud or to the exclusion of false pretenses. That describes 523A2A. What we successfully argued, what, six years ago, eight years ago now, before the bankruptcy court, that language is repeated over and over and over again in the Fifth Circuit. In fact, Judge Higginbotham, you've joined in a half dozen decisions where that same language has been used. Now, the Hollanders in their appeal brief will contend that fraud under Louisiana law is different, and there's all these other sorts of adjectives that you need to apply to it. It's much bigger, and it's much meaner, but these are pretty colorful and strong adjectives that define exactly what we successfully proved to the bankruptcy court. Now, make no mistake, I'm not arguing, because I don't need to, that a non-dischargeability determination under 523 necessitates a finding of fraud under Louisiana law because the district court expressly declined itself to make that determination either. What we are contending is that the district court got it right when it found and adopted all of the bankruptcy court's very own findings of facts to determine that this was indeed fraud under Louisiana law. Now, the Hollanders contend that this is an issue of character determinations, that the bankruptcy court was in the best position to make the character determinations. Well, the bankruptcy court made a lot of character determinations in this case. It did so when it held that the failure to disclose the alterations in the home were designed to deceive, that it was designed to avoid a chill on the sale, that they didn't want to scare off potential buyers, that they didn't want to have buyers like the Sigillitos perform a more particularized investigation or an additional investigation. Simply put, they wanted to command the highest price possible and attract the most buyers possible. That's obtaining an unjust advantage. Now, one of the points that the bankruptcy court harnessed upon to make that determination was not in the Hollanders' belief of whether they thought the home was repaired. It was in their failure to disclose the extent of the alterations in the home. And one of the facts that the bankruptcy court harnessed upon was the difference in the two disclosure statements that the Hollanders made in this case. When they first put their home on the market, the Hollanders hired a real estate agent. And, in fact, it's in that very same month that they sued their architect, builder, and insulation contractor. But in that disclosure statement, it says that they had to replace the entire flooring system because there was poor millwork. Fast forward 10 months later. The Hollanders hire a different real estate agent. And they sign a different disclosure statement. It's the one that the Sigillitos relied upon. And in that disclosure statement, it gives the impression that the flooring system was replaced for cosmetic reasons. It says that they replaced glued-down Brazilian cherry flooring with nailed-down flooring. And the bankruptcy court held, as to that issue, that that disclosure statement gave an entirely different impression of the flooring problems than what was actually known to the Hollanders, that the Hollanders knew there was a systematic defect in the flooring system and that they didn't tell the Sigillitos. You can imagine, again, the Sigillitos' frustrations with, as the bankruptcy court boldly put it, as the district court boldly put it, the bankruptcy court's repeated failure to make the appropriate findings on remand. The district court had all the facts, all the law before it. The district court was applying only and exclusively the bankruptcy court's findings of fact in its 08 Memorandum of Opinion, and the district court got it right. This court should affirm the district court and end the litigation that should have ended several years ago. Let me ask you a strenuous question. What is the cause of this long delay in this case? I hope we weren't responsible for that. What happened? Why is this case delayed? Why did it take so long? It's going on and on and on. Were the courts slow in responding or what? In some instances, the courts were slow in responding. There were two different district courts that have made decisions in this case. The case was reassigned from one division to another, and as the case often is, the newbie judge gets a lot of cases and has to process the ones that have gone on for some time. Both of those judges, by the way, have been judges that have continued to reverse the bankruptcy court over and over again. The other thing that contributes to the epic appeal process here is the fact that we've appealed over and over and over and over again. We keep on winning, by the way, because the bankruptcy court continues to come up with new reasons why it wants to rule the way it wants to rule. There was one occasion where it applied the wrong standard overview. That got all the way up to the Fifth Circuit, and we were successful in reversing, and it went all the way back down. Then the bankruptcy court comes up with a definition of what is required to obtain an unjust advantage that the district court later determined was in legal error and had to kick it back down again. We've been popping up and down and up and down and up and down for years now, and this case should end today. Thank you. Thank you, Your Honor. The case is going to end today, and we're not going to take a writ of the Supreme Court, I promise you that. The bankruptcy judge never made a finding of fact that the Hollanders were guilty of fraud in determining that the debt was non-dischargeable. Never did that. Read the opinion. She made a finding that there was an intent to deceive, which was sufficient to constitute in her mind a false pretense, which is a separate ground for non-dischargeability under the bankruptcy code. What is required for a finding of fraud, whether in the common law or in Louisiana, is something separate and apart from mere unknowing misrepresentation. And when she was asked on remand to make the particular finding that she was asked to make on the fraud question, she refused to find that there was fraud because she properly interpreted and applied the law of Louisiana that in order to find a finding of fraud, you've got to prove that the deception was intended to produce a harm, formulated either as an unjust advantage or as an intent to cause a loss, neither of which Judge Magner found either in her original memorandum finding or subsequently. I can fail you to disclose that. Ma'am? Sir? I have a hard time understanding how a failure to disclose the extent of damage that had already been done to this house could be anything other than to again call it—you can dress it up and say unfair advantage. But that means in plain English that it's going to put the shaft to whoever buys the house. You don't want to—you did not want them to go there. That's viewed— That's what— Your Honor, that question is viewed with 20, 20 eyes. Why isn't that the—that seems to be the natural argument here. What do you say to that? That—well, I'm going to respond to that. That argument is viewed with 20, 20 hindsight. At the time of that sale, the Hollanders honestly believed and Judge Magner found that they honestly believed that the floors had been repaired. So if the floors had been repaired and they bought it, there's not an issue. Regardless of the failure to disclose the scope of the extent of the repairs that she made— Isn't that the buyer's— But that's not— And the buyer has that information in order to make that valuation of the house? Not—well, it may be. It was the basis for finding that the Hollanders were obligated to pay for the repairs that the single-legals had to make. But it was not— The bankruptcy judge found an intent to deceive. Is that right? What's that? The bankruptcy judge found an intent to deceive. An intent to deceive for purposes of establishing non-dischargeable— Understand what the purpose is, but the finding was made. Understand? You're going to maintain that's what the purpose is. And you're saying that's insufficient under Louisiana law. Is that what you're saying? To find fraud. On page 29 of my brief? Well, I'm looking at Schoenberg v. State Farm where it says, in order to find the elements of a tort of fraud, misrepresentation of a material fact made with intent to deceive, which is a finding you agree was made reasonable or justifiable reliance by the plaintiffs and resulting injury. That's fraud under Louisiana law. This is for purposes of fraud for purposes of rescinding a contract under Article 1923, not a tort fraud, a contract fraud. That's what they're suing. They're suing in contract for the rescission of a contract— So you're telling me Schoenberg v. State Farm is not about the tort of fraud? No, they are talking about a tort law fraud, not a contract fraud, for purposes of vitiating consent. So let me quote—I'll just quote from Altex Ready Mix Corporation versus a First Circuit case decided in 1955. I'm just going to quote right out of it. Fraud exists—contract fraud exists if it can be shown that material misrepresentations have been made by one party designed to deceive another and to obtain some unjust advantage or to cause loss or inconvenience to the other. That's the statutory definition. That's the elements that you have to prove. Now, she found—Judge Wagner found—she consistently found that for purposes of non-dischargeability, there was an intent to deceive by failing to disclose the full extent of the repairs on the real estate form. But she did not find the other part for purposes of state law fraud under Article 1953. She did not find—she never found and she refused to find on the basis of her evaluation of the credibility of those witnesses that they were motivated by a desire to cause these people a loss or to gain some unjust advantage of them. Now, they want to say the facts that she found have to be that, but that's not what— They were just motivated by a desire not to make it known. They were motivated by a desire to harm those people because they thought they had fixed it. And that's the—so let me give you two—let me give you— You're out of time. Okay. Thank you, gentlemen. That concludes the Court's docket for this week.